UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 23-1519 JGB (KKx)** | Date | March 6, 2024 |
|---|---|---|---|
| Title | *Dennis Cooper v. J. Natividad Abeja, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion for Default Judgment (Dkt. No. 20); and (2) VACATING the March 11, 2024 Hearing (IN CHAMBERS)

Before the Court is a motion for default judgment filed by Plaintiff Dennis Cooper ("Plaintiff"). ("Motion," Dkt. No. 20.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the Motion, the Court **GRANTS** the Motion. The March 11, 2024 hearing is **VACATED**.

### I. BACKGROUND

On August 1, 2023, Plaintiff filed a complaint against Defendant J. Natividad Abeja ("Defendant") and Does 1 through 10. ("Complaint," Dkt. No. 1.) The Complaint asserts five causes of action, which arise out of alleged accessibility violations at a restaurant (the "Business") located at 1313 N. Waterman Ave., San Bernardino, California: (1) a violation of the Americans with Disabilities Act ("ADA"); (2) a violation of California's Unruh Civil Rights Act ("Unruh Act"); (3) a violation of California's Disabled Persons Act; (4) a violation of the California Health & Safety Code; and (5) negligence. (See id.) The same day, Plaintiff filed a request for the clerk to issue a summons. (Dkt. No. 4.) Also on August 1, 2023, the Clerk issued a summons. (Dkt. No. 8.)

On August 11, 2023, the Court issued an order to show cause why it should not exercise supplemental jurisdiction over Plaintiff's state law claims. ("OSC," Dkt. No. 9.) On August 18, 2023, Plaintiff filed a response to the OSC. ("OSC Response," Dkt. No. 10.) On August 25, 2023, the Court declined to exercise supplemental jurisdiction over the state law claims and

dismissed those claims without prejudice to filing in state court. ("Order Dismissing State Law Claims," Dkt. No. 11.) The Court ordered Plaintiff to file a response indicating whether he intended to proceed on the ADA claim alone. (Id.) On August 31, 2023, Plaintiff responded, indicating he would proceed with this action. (Dkt. No. 12.)

On December 8, 2023, Plaintiff filed a proof of service on Defendant, indicating that Defendant was served by personal service. ("Proof of Service," Dkt. No. 15.) According to the Proof of Service, Defendant was personally served on September 7, 2023. (Id.) Thus, service was proper. Despite being served with the summons and Complaint, Defendant failed to file a responsive pleading within the time prescribed by the Federal Rules of Civil Procedure.

Also on December 8, 2023, Plaintiff filed a request for entry of default against Defendant. ("Default Request," Dkt. No. 16.) On December 12, 2023, the Clerk entered default against Defendant. ("Entry of Default," Dkt. No. 17.)

On February 2, 2024, Plaintiff filed the Motion. (Motion.) In support of the Motion, Plaintiff filed the following documents:

- A declaration of attorney Jason J. Kim ("Kim Decl.," Dkt. No. 20-2) with an attached exhibit ("Kim Ex. A.," Dkt. No. 20-2);
- A declaration of Dennis Cooper ("Cooper Decl.," Dkt. No. 20-3).

Plaintiff did not file an opposition.

## II. LEGAL STANDARD

Entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend[.]" Fed. R. Civ. P. 55(a). A party has no duty to defend, however, unless the plaintiff properly served the defendant with the summons and complaint, or waives such service, pursuant to Federal Rule of Civil Procedure 4. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) ("one becomes a party officially, and is required to take action in that capacity, only upon service of a summons"). Pursuant to Federal Rule of Civil Procedure 55(b), a court may order default judgment following the entry of default by the Clerk of the Court. Fed. R. Civ. P. 55(b). In the Central District of California, a plaintiff seeking default judgment must also satisfy Local Rule 55-1, which states that an application to the Court for default judgment must be accompanied by a declaration that conforms to the requirements of Federal Rule of Civil Procedure 55(b) and include the following information:

> (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Relief Act does not apply; and (5) that notice

>of the application has been served on the defaulting party, if required.

L.R. 55–1.

Entry of a defendant's default does not automatically entitle the plaintiff to a court-ordered judgment. See Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986). Instead, district courts are accorded wide discretion as to whether to enter default judgment. See Aldabe v. Aldabe, 616 F.2d 1089, 1092-93 (9th Cir. 1980). In Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set forth the following factors for consideration in determining whether to grant default judgment:

>(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Id. at 1471-72 ("Eitel factors").

Upon entry of default, the well-pleaded factual allegations of a complaint are deemed true; however, allegations pertaining to the amount of damages must be proven. TeleVideo Systems Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987); see also DirecTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007); Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). A plaintiff is required to provide evidence of damages, and a court may rely only on the evidence submitted by the plaintiff or order a full evidentiary hearing. See Fed. R. Civ. P. 55(b)(2). Further, the relief sought, including damages, must not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). When a promissory note, contract or applicable statute provides for the recovery of attorney's fees, Local Rule 55-3 provides a schedule of attorney's fees to be awarded a plaintiff entitled to default judgment. See L.R. 55-3.

### III.   DISCUSSION

Plaintiff moves this Court to enter default judgment against Defendant. Plaintiff seeks to recover $3,097 in attorney's fees and costs, and injunctive relief. (See Motion at 2.) In order for default judgment to be entered in his favor, Plaintiff must meet the procedural requirements described above and establish that, on balance, the Eitel factors weigh in his favor. The Court evaluates these factors below.

//
//
//

### A. Procedural Requirements

Plaintiff has satisfied the procedural requirements for entry of default judgment by the Court. Pursuant to Federal Rule of Civil Procedure 55, Plaintiff did not petition for entry of default judgment until after default was entered against Defendant by the Clerk. (See Default Request; Entry of Default.) Additionally, Plaintiff's Motion and accompanying declarations set forth the information required by the Local Rules of this Court. (See Motion at 1-2; Kim Decl. ¶¶ 3, 5-6.) Plaintiff's Counsel also represents that notice of the Motion was served on Defendant on February 2, 2024 by first class United States Mail. (Kim Decl. ¶ 6.) Thus, Plaintiff has complied with the applicable Local Rules and Federal Rules.

### B. Eitel Factors

#### 1. Possibility of Prejudice to Plaintiff

Plaintiff would suffer prejudice if the Court does not enter default judgment. Because Defendant has not appeared in this action, a default judgment is the only means by which Plaintiff may prevail. Absent a default judgment by this Court, Defendant will have avoided liability simply by not responding to Plaintiff's action. Therefore, this factor weighs in favor of default judgment. See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding the plaintiff would suffer prejudice absent entry of a default judgment because of the defendant's unwillingness to cooperate and defend against the claim).

#### 2. Substantive Merits of Plaintiff's Claims

The second and third Eitel factors concern the merits of Plaintiff's substantive claims and the complaint's sufficiency. Eitel, 782 F.2d at 1471–72. "The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) (internal citation omitted); see also Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). Because the Court has already dismissed Plaintiff's state law claims (see Order Dismissing State Law Claims), Plaintiff's sole remaining cause of action is a violation of the ADA. (See Complaint.)

Title III of the ADA prohibits discrimination by public accommodations. It provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (internal alteration original). In addition, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the

defendant's place of business [or property] presents an architectural barrier prohibited under the ADA and (2) the removal of the barrier is readily achievable." Parr v. L & L Drive–Inn Restaurant, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000).

   a. **Standing**

As with all causes of action, a plaintiff must have Article III standing to bring a claim under the ADA.  To establish Article III standing, a plaintiff must demonstrate that he or she has suffered an injury in fact, that the injury is traceable to the defendant's challenged conduct, and that the injury can be redressed by a favorable decision. Hubbard v. Rite Aid Corp., 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006). "Under the ADA, when a disabled person encounters an accessibility barrier violating its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 947 (9th Cir. 2011).  Rather, the barrier need only interfere with the plaintiff's "full and equal enjoyment" of the facility. 42 U.S.C. § 12182(a). The Ninth Circuit has held:

> Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III . . . .

Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1042 n.5 (9th Cir. 2008).  "[A] 'barrier' will only amount to such interference if it affects the plaintiff's full and equal enjoyment of the facility on account of his particular disability." Chapman, 631 F.3d at 947.  Plaintiff alleges that he went to the Business in April 2023 but encountered barriers, including accessible parking spaces that are improperly identified; accessible parking spaces without required signage; accessible parking spaces without required markings; an access aisle that is not of the required width; and an access aisle without a level surface slope. (Complaint ¶¶ 10, 13.)  He alleges that the barriers interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered by the Business, and that the barriers caused him difficulty and frustration. (Id. ¶¶ 12, 14.)  Plaintiff also alleges that he wishes to return and patronize the Business, but he is deterred from visiting the Business because of his knowledge of the barriers. (Id. ¶ 14.)  He has thus suffered an injury in fact and has standing.

   b. **Plaintiff's Disabled Status**

The ADA defines disability as "[a] physical or mental impairment that substantially limits one or more major life activities . . . [,] a record of such an impairment[,] or being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Major life activities as defined by the ADA include walking and standing. Id. § 12102(2).  Plaintiff alleges that he is "paraplegic, suffers from immobility syndrome with chronic pain, and is substantially limited in his ability to walk."

(Complaint ¶ 1.) He requires the use of a wheelchair at all times when traveling in public. (Id.) Because these allegations are accepted as true, he has established a physical impairment that substantially limits the major life activities of walking and standing. Plaintiff is therefore disabled within the meaning of the ADA and has satisfied the first element of his Title III discrimination claim.

### c. Place of Public Accommodation

A restaurant is a place of public accommodation. 42 U.S.C. § 12181(7)(B). Plaintiff asserts that the Business is a restaurant establishment that is privately owned, open to the public, and is a place of public accommodation. (Complaint ¶ 11.) The Complaint clearly establishes that the Business is a place of public accommodation. Accepting these allegations as true, Plaintiff has established the second element of an ADA claim.

### d. Denial of Public Accommodation Due to Architectural Barriers

The next two elements of an ADA architectural barriers claim evaluate whether architectural barriers worked to discriminate against the plaintiff on account of his physical disability. "Whether [a plaintiff is] denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards." Moeller v. Taco Bell Corp., 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011); see Chapman, 631 F.3d at 945. Those standards are set forth by the ADA Accessibility Guidelines ("ADAAG"), which "provide [ ] the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." Chapman, 631 F.3d at 945; see 28 C.F.R. pt. 1191 (2010 Standards); 28 C.F.R. pt. 36, App. D (1991 Standards). Plaintiff highlights two violations of the ADA in the Motion: a failure to properly designate a parking space for persons with disabilities; and a failure to provide a proper access aisle. (Motion at 8-9.) Under the ADAAG and, by incorporation, the California Building Code, accessible parking spaces must be properly identified with signs stating "Minimum Fine $250," "Van Accessible," and an "Unauthorized Parking" tow-away warning. 36 C.F.R. pt. 1191; Cal. Bldg. Code §§ 11B-502.6, 11B-502.8. An access aisle must also have a minimum width of 96 inches, contain a "NO PARKING" marking, contain the Internal Symbol of Accessibility marking, and be level with the parking space the aisle serves. 28 C.F.R. pt. 36, App. A § 4.1.2(5)(b) (1991 Standards); Cal. Bldg. Code § 11B-502.3.3.

The Complaint alleges that the accessible parking spaces at the Business are not properly marked with the "Van Accessible," "Minimum Fine $250," and "Unauthorized Parking" signs, and the access aisle does not meet the 96-inch minimum width, does not contain a "NO PARKING" marking, and does not have a level surface slope. (Complaint ¶ 13.) Plaintiff therefore alleges a violation of the accessibility standards and thus a denial of public accommodations on the basis of disability.

### e. Readily Achievable Removal of Public Barriers

Whether removal of a barrier is readily achievable involves consideration of four factors:

> A) the nature and cost of the action needed . . .; B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

Hubbard, 433 F. Supp. 2d at 1168 (citing 42 U.S.C. § 12181(9)).

The Ninth Circuit has adopted a burden-shifting framework to establish whether removal of an architectural barrier is readily achievable. Lopez v. Catalina Channel Express, Inc., 974 F.3d 1030, 1034 (9th Cir. 2020). Under that framework, a plaintiff has the initial burden at summary judgment of "plausibly showing that the cost of removing an architectural barrier does not exceed the benefits under the particular circumstances." Id. at 1035 (emphasis omitted). If a plaintiff meets that initial burden, the defendant then bears that ultimate burden of persuasion that barrier removal is not readily achievable. Id. at 1040. The Court infers from Lopez that the appropriate standard in ruling on a motion for default judgment is whether Plaintiff has plausibly alleged that the cost of removing an architectural barrier does not exceed the benefits as it relates to the Property. Although a close call, Plaintiff alleges sufficient facts for the Court to infer that the costs of addressing architectural barriers like the signage issue discussed above are relatively minimal, while Defendant has the financial resources and wherewithal to remove these barriers from the Business without much difficulty or expense. (Complaint ¶¶ 16-17, 24, 26, 28.) Having met his initial burden, the burden then shifts to Defendant to carry the burden of persuasion on this affirmative defense. See Lopez, 974 F.3d at 1040. District courts within the Ninth Circuit "generally agree that defendants may waive the 'readily achievable' affirmative defense, for instance, by omitting it from their answer." Hernandez v. Polanco Enterprises, Inc., 19 F. Supp. 3d 918, 931 (N.D. Cal. 2013). By failing to file an answer, and indeed to appear at all, Defendant has "failed to meet his burden [of persuasion] because he failed to appear and defend." Vogel, 992 F. Supp. 2d. at 1011. Accordingly, Plaintiff has established the fifth and final element of his Title III discrimination claim. Plaintiff has stated a cause of action under the ADA.

### 3. Sum of Money at Stake

The fourth Eitel factor examines the amount of money at stake in the action relative to the gravity of the defendant's conduct. PepsiCo, 238 F. Supp. 2d at 1176. Plaintiff seeks $3,097 in attorney's fees and costs. (Motion at 2.) "This, plus any amount that would have to be spent to comply with an injunction, would be the entirety of [Defendant's] liability should the court

grant default judgment. Although not a form of monetary recovery, the injunction will undoubtedly require that [Defendant] spend money to remove barriers at the location. As noted, however, the ADA limits this liability to removal of barriers that is readily achievable, and in this way caps a defendant's liability. The court concludes that the amount sought is neither too large nor to unreasonable when balanced against [Defendant's] actions." Vogel, 992 F. Supp. 2d. at 1012 (so holding where the plaintiff sought a total monetary judgment of $13,729.20). Thus, the Court finds this factor weighs in favor of granting the Motion.

### 4. Possibility of Dispute Concerning Material Facts

Upon entry of default, all well-pleaded factual allegations are deemed true—except those pertaining to damages. TeleVideo, 826 F.2d at 917; Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. Feb. 11, 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). Because no Defendant has appeared in this action or asserted any defenses, it is unlikely that disputes as to material facts will arise. Accordingly, this factor favors default judgment.

### 5. Excusable Neglect

Under the sixth factor, the court must consider whether a defendant's default may have been due to excusable neglect. Eitel, 782 F.2d at 1472. This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates the defendant is aware of the action. Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1082 (C.D. Cal. Jan, 23, 2012). In the instant case, as described above, Plaintiff properly served Defendant with the summons, Complaint, and Motion. Accordingly, the Court concludes Defendant's default was not the product of excusable neglect. Thus, this factor favors entry of default judgment.

### 6. Policy Favoring Decision on the Merits

"The final Eitel factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment." Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Generally, default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472 (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). But a defendant's failure to appear or otherwise defend an action "makes a decision on the merits impractical, if not impossible," and thus "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." PepsiCo, 238 F. Supp. 2d at 1177; see also Wecosign, 845 F. Supp. 2d at 1083. Here, Defendant's failure to defend against this action makes a decision on the merits impracticable. The final factor thus weighs in favor of default judgment.

On balance, the Eitel factors weighs in favor of default judgment against Defendant. Thus, the Court **GRANTS** the Motion.

## C. Requested Relief

Next, the Court examines whether Plaintiff is entitled to the relief he requests. Rule 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). While a court may accept facts as alleged in the pleadings, a plaintiff must submit evidence to prove the amount of damages. See Provision Interactive Techs., Inc. v. Prosperity Investments, LLC, 2019 WL 6729677, at *4 (C.D. Cal. July 19, 2019) ("To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit.") (internal quotations omitted). Plaintiff seeks injunctive relief and attorney's fees and costs, each of which were prayed for in the Complaint. (See Complaint.)

### 1. Injunctive Relief

Plaintiff seeks an injunction to remedy the architectural barriers identified in the Complaint. (Motion at 2.) To be entitled to injunctive relief under 42 U.S.C. § 12188(a)(2), Plaintiff must show that Defendant has violated the ADAAG. "In the case of violations [of the accessibility provisions] of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. . . ." Id.; see Moeller, 816 F. Supp. 2d at 859. "A plaintiff is not required to satisfy the other prerequisites generally needed for injunctive relief since '[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief.'" Vogel, 992 F. Supp. 2d at 1015 (citations omitted). "Thus, injunctive relief is proper when architectural barriers at defendant's establishment violate the ADA and the removal of the barriers is readily achievable." Id. Because Plaintiff has established that the Property violates the ADA and has met his initial burden of demonstrating that the removal of barriers is readily achievable, and Defendant has failed to demonstrate otherwise by virtue of failing to defend this action, Plaintiff is entitled to the injunctive relief he seeks. See id.

### 2. Attorneys' Fees and Costs

Plaintiff seeks $2,510 in attorney's fees and $587 in costs under 42 U.S.C. § 12205. (Motion at 2, 11; Kim Decl. ¶ 7.) Plaintiff is indisputably a "prevailing party," because he has secured an "enforceable judgment[ ] on the merits." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603–04 (2001). "A prevailing plaintiff under the ADA should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." See Jankey v. Poop Deck, 537 F.3d 1122, 1130 (9th Cir. 2008) (internal quotation marks omitted). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Once the court has calculated that amount, known as the lodestar, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" Id. at 434.

Plaintiff's Counsel, Jason J. Kim, asserts that his hourly rate is $500 per hour. (See Kim Ex. A.) He avers that he has been in practice for over 25 years, has prosecuted and defended "numerous" disability access cases, has a "great amount" of trial experience, has taken and defended "hundreds" of depositions, and has attended "hundreds" of hearings. (Kim Decl. ¶ 2.) The paralegal on the case, whose name and experience are not provided, charges an hourly rate of $150 per hour. (See Kim Ex. A.) "[T]he established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted). Together, the work of Mr. Kim and the paralegal represents a blended billing rate of approximately $310 per hour.[1] (See Kim Ex. A.) The Court finds that the rates charged are reasonable, as courts in this district regularly hold that "a $300/hour blended billing rate is . . . commensurate with the complexity level of these ADA cases." Shayler v. 1310 PCH, LLC, 51 F.4th 1015 (9th Cir. 2022); see also Langer v. Kha Dinh Nguyen, 2019 WL 7900270, at *6 (C.D. Cal. Nov. 27, 2019) ("[A] blended rate of $300 would reflect an appropriate use of attorneys and paralegals."); Machowski v. JACMAR PARTNERS III, 2021 WL 2980223, at *2 (finding that $300 is a reasonable hourly rate for those involved in an ADA case); Charlebois v. Angels Baseball LP, 993 F. Supp. 2d 1109, 1118 (C.D. Cal. 2012) (finding rates of $475 to $500 per hour for attorneys with 5-6 years of experience reasonable in ADA case). The Court finds that the rates charged are reasonable.

The Court has reviewed the billing summary provided by Plaintiff's Counsel and finds that the hours expended on his work, 8.1 hours in total, are reasonable. (See Kim Ex. A.) While virtually all of the documents filed in this action by Plaintiff are almost certainly based on boilerplate templates (including the Motion), the hours expended by Plaintiff's Counsel reflect that reality. For instance, Plaintiff's Counsel spent only 1.5 hours on drafting and filing the Complaint, and 1.5 hours on the Motion. (See id.) Plaintiff's Counsel has not billed for administrative tasks or those that should have been handled by nonlawyers. (See id.) The 8.1 total hours expended by Mr. Kim on this case are reasonable, and Plaintiff is thus entitled to that number of hours multiplied by Mr. Kim's and the paralegal's hourly rates, or $2,510 in total. (See Kim Ex. A.)

Plaintiff seeks a total of $587 in costs: $402 for the filing fee, $80 for service of process, $60 for gas reimbursement, and $45 for a deed purchase. (Kim Ex. A.) Plaintiff's accounting of these costs is reasonable. (See Kim Ex. A; Proof of Service at 2.) Plaintiff is also entitled to recovery of these costs. See L.R. 54-3.

The Court awards Plaintiff $2,510 in attorney's fees and $587 in costs, for a total of $3,097.

//
//

---

[1] $2,510 [total attorney's fees] / 8.10 [hours billed] = $309.88 per hour blended rate. (Kim Ex. A.)

### IV. CONCLUSION

For the reasons above, the Court **GRANTS** the Motion.  Judgment shall be entered as follows:

1. Judgment is entered in favor of Plaintiff Dennis Cooper and against Defendant J. Natividad Abeja on Plaintiff's Americans with Disabilities Act (ADA) claim.  The Court has declined to exercise supplemental jurisdiction over Plaintiff's state law claims and has dismissed Plaintiff's state law claims without prejudice.

2. Plaintiff is **AWARDED** $3,097 in attorney's fees and costs from Defendant.

3. Defendant is **ENJOINED** to ensure that accessibility barriers at the Business located at 1313 N. Waterman Ave., San Bernardino, California (the "Business"), are removed and/or corrected, including, but not limited to, ensuring that accessible parking and pathways at the Business are accessible.

4. Plaintiff is **ORDERED** to mail a copy of this order and the judgment concurrently filed therewith to Defendant.  Plaintiff shall file a Proof of Service with the Court within ten days of the date of this Order.

5. The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED.**